August Hoerdt, as Trustee, and Ross S. Welch as Successor Trustee Under Trust Agreement Dated February 25, 1942, and Known as Trust No. 102, Plaintiffs-Appellants, v. City of Evanston, a Municipal Corporation, Buell Dutton and Wayne Anderson, Defendants-Appellees.

Gen. No. 52,166.

First District.

August 5, 1968.

Rehearing denied October 28, 1968.

Ross S. Welch, of Chicago, for appellant.

Jack M. Siegel, Corporation Counsel of City of Evanston, for appellee.

TRAPP, J.

Plaintiffs appeal from the order of the trial court which dismissed an action for a declaratory judgment, entering judgment in favor of the defendants, and against the plaintiffs. The complaint prayed that defendants be directed to issue a building permit, that the mandatory zoning ordinance of the City of Evanston be held inapplicable to plaintiffs' property, and that said City be restrained from enforcing such ordinance as to plaintiffs' premises.

It is alleged that plaintiffs, as trustees, acquired title to a parcel described as the East 20 feet of Lot 14 in Block 37 in a specified subdivision of blocks in 1949. The parcel has a frontage on Central Street in Evanston of approximately 20 feet and an approximate depth of 155 feet. It is further alleged that such parcel is unimproved "and is not used for any purpose whatsoever," and that such parcel adjoins Lots 12 and 13 upon which is built an apartment building with 30 apartment units acquired by the plaintiff trustees in 1942.

The answer denies that the described 20-foot parcel is unused and alleges that it was, in fact, used as accessory to the apartment building. There is a denial that the parcel was acquired by the trustees separately from the apartment building in 1949. Nothing in the pleading or the record clarifies such issue as the stipulation in the record only states that "it appears" that title to the respective parcels was acquired on the respective dates.

An issue is whether or not the two described parcels are separate in development of title and unrelated in use, and continued to be so disparate at the time of disposition in the trial court.

Plaintiffs allege that the City of Evanston first adopted an off-street parking ordinance applicable to the apartment building, then zoned commercial, in 1952. It is argued that such apartment building, at that time, became a nonconforming use.

It is alleged that on March 15, 1963, plaintiffs applied for a building permit to construct a two-story office and apartment building; that objections were made to the plans submitted, but the revised plans and application were denied in 1963 because of inadequate off-street parking provisions. Plaintiffs then filed for a variation before the Zoning Board of Appeals. Such application was denied in October, 1963, because of the nonconforming provisions for parking on the 20-foot parcel, and because

of accessory use of such parcel with the apartment building.

It is alleged that, thereafter in April, 1965, plaintiffs again submitted plans for a generally similar building on the 20-foot parcel with an application for a building permit, but that such was refused "in spite of the circumstances that such plans conformed in all respects with the zoning ordinances."

The complaint alleges that in June, 1964, the zoning ordinance of Evanston was amended to provide:

> "Where two or more adjoining lots shown in a plat properly recorded with the office of County Recorder have been held in common ownership at any time subsequent to the effective date of this ordinance and use of such adjoining lots as a single parcel would meet the requirements of this ordinance, the ownership of said lots shall not be separated nor shall any of the lots be used in any way to conflict with the regulations of this ordinance. No building permits shall be issued for the use of any lot or portion of lot sold, transferred or conveyed in violation of the provisions of this section."

It is the apparent theory of the argument and the pleadings that plaintiffs acquired a right to a building permit upon the 20-foot parcel at the time of the application in 1963, but that the ordinance as amended in 1964 was employed to "tack" or attach the 20-foot parcel to the apartment building for zoning purposes as an "after the fact" amendment with the result that (1) the 20-foot parcel is taken without just compensation or due process when the public welfare did not require such restriction on plaintiffs' use of the land, and (2) the plaintiffs are injured in that a right in a nonconforming use of the apartment building was lessened, or reduced in scope.

Defendants' answer alleges multiple affirmative defenses including: that an ordinance adopted in 1940, which required parking spaces on the premises or adjoining property, was effective to control both the apartment building and the parcel when plaintiffs acquired such property in 1942 and 1949; that an ordinance adopted in 1960 provided:

> "Parking spaces accessory to buildings and uses which exist on the effective date of this ordinance shall not be reduced to less than the number required under this Section X for buildings hereafter erected,"

and that the 20-foot parcel had been used since purchase as an accessory use including off-street parking to the apartment building on Lots 12 and 13.

Such answer further alleges that the zoning ordinance as amended in 1963 provided in § 42–108 that no building permit should issue unless an approved recorded plat of the area was submitted with the application for the permit, and that no such instrument had been submitted. A plat identified as Plaintiffs' Exhibit No. 6, contained in the supplemental abstract, shows neither approval nor recording on its face, and there is nothing in the record upon the issue.

As a further affirmative defense, it is alleged that under an ordinance effective in 1960 the apartment building on Lots 12 and 13 became nonconforming in the required lot area for such number of dwelling units, and as to the area for each dwelling unit. Defendants deny that the plaintiffs acquired a right to build on the 20-foot parcel prior to the amendment of 1964, relating to "common ownership."

The reply filed by plaintiffs admits that the 20-foot parcel is used for drying laundry and the parking of automobiles, albeit characterized as occasional and random; it denies that § 42–108 of the ordinance (requiring an

approved recorded plat to be on file before a building permit is issued) is germane, as the conveyance of the 20-foot parcel did not involve a subdivision. There is no reply to the affirmative defenses relating to the amendment of 1960 prohibiting the reduction of accessory parking spaces, and no reply to the allegations of the answer as to the nonconforming use of the apartment as to area.

■ This appeal is considered in the light of the nature of proceedings for declaratory judgment. The award or denial of relief, even where the controversy or some part of it will be settled, is discretionary with the court. Chapter 110, § 57.1 and Comment to Subsection (1), Smith-Hurd Annotated Statutes. State Farm Mut. Automobile Ins. Co. v. Morris, 29 Ill App2d 451, 173 NE2d 590. That opinion holds that dismissal of the action is an appropriate judicial method of declining to grant relief; that procedure in declaratory judgment provides cumulative and additional remedies, but it neither provides a substitute for existing remedies nor creates new substantive rights. Interlake Iron Corp. v. Dravo Corp., 68 Ill App2d 167, 215 NE2d 137. The court's discretion is as to whether to enter or to decline to enter judgment. State Farm Mut. Automobile Ins. Co. v. Morris, supra, and the issue upon appeal is whether there was such an abuse of discretion by the trial court as to require a reviewing court to intervene. Interlake Iron Corp. v. Dravo Corp., supra.

Nothing in the record discloses what was passed upon by the trial court in the disposition of the several affirmative defenses. From the record presented we conclude that the trial court could very well have determined that the apartment building was nonconforming as to off-street parking under the ordinance of 1940; that the ordinance of 1960, prohibiting the reduction of accessory parking space, was applicable and authorized denial of a building permit. Again, the court could have determined that there had been a failure to comply with the requirement

of filing an approved reported plat as precedent to a building permit. Since such issues have not been brought into a focus in this record, extended examination of the application of the several ordinances would become a tedious toure de force. From our examination it appears that there would be no abuse of discretion in finding one or more of such ordinances controlling.

The argument that the "common ownership" amendment of 1964 was used as an "after the fact" ordinance to deny the building permit is not supported in the record. The issue presented in the trial court arises upon the application of April, 1965, for a building permit on the 20-foot parcel. This record shows nothing as to the reason that such permit was refused. The allegation that there was compliance "in all respects" with the zoning ordinances is a conclusion which does not permit judgment by this court. It is argued that issues on such denial were framed in a mandamus proceeding which was dismissed, but our record is barren. Whether the trial court considered them cannot be ascertained.

Even if we assume that such permit was denied solely because of the "common ownership" amendment of 1964, it cannot logically be said that there was use of an "after the fact" ordinance to deny a permit sought in 1965.

Plaintiffs' thesis that the alleged use of the "common ownership" ordinance results in a taking of the 20-foot parcel without compensation or due process fails to come within the rule in this State, i. e., a party does not acquire a right to use premises free and clear of subsequent changes in zoning provisions unless the evidence shows a substantial change in position made in good faith through expenditures, or obligations incurred in reliance upon the probability that the required building permit would be issued. Opinions establishing such standard are collected in People ex rel. Nat. Bank v. Cook County, 56 Ill App2d 436, 206 NE2d 441.

 Plaintiffs' evidence directed to this issue is not impressive. The record discloses no more than an assertion that the purchase of the 20-foot parcel in 1949 was for building purposes. Plaintiff trustees testified that there had been no request for a permit from 1949 until 1963. The purpose to build lay aborning for some 14 years. The fact that the tax authorities assessed the 20-foot parcel separately from the apartment building is scant evidence of actual or intended use. Payment of taxes is an incident to the ownership of real estate which we will not accept as evidence of a change in position in reliance upon an existing zoning ordinance.

The only expenditure of record which might qualify is the sum of $200 for plans for construction on the 20-foot parcel, dated on May 27, 1963. The further expenditure of $225 for plans of a similar nature was made as of December 20, 1965, after the petition for zoning variation on the 20-foot parcel had been denied, and after the passage of the ordinance of 1964, which is attacked. There is great doubt that it can properly be said that the latter payment was made in reliance upon a right to build on the parcel.

The evidence in this case relevant to incurring detriment in good faith reliance upon existing ordinances is in no way comparable in degree to such evidence in the authorities cited, and relied upon by plaintiffs. In each it is noted that prompt, if not immediate action, was taken to develop the property acquired.

In Western Theological Seminary v. Evanston, 325 Ill 511, 156 NE 778, which plaintiffs quote at length, the Seminary had purchased or leased large amounts of land, meanwhile selling the property formerly held by it for school purposes. The land at issue there was worth $150,000 and there were preparations to erect a building at a cost of $750,000. After such steps were taken there was an attempt to amend the ordinance in a manner that would exclude the Seminary. It was held to be unreasonable and arbitrary to exclude the Seminary after the

314

funds had been invested. In Cos Corp. v. City of Evanston, 27 Ill2d 570, 190 NE2d 364, land costing $47,000 and other property costing $189,000 was procured, with further expenditures in architect fees and expenses. Such was held to be a substantial change. Similar factors controlled the result in Fifteen Fifty State St. v. Chicago, 15 Ill2d 408, 155 NE2d 97; Nott v. Wolff, 18 Ill2d 362, 163 NE2d 809; People ex rel. v. Morton Grove, 16 Ill2d 183, 157 NE2d 33; People ex rel. Nat. Bank of Austin v. Cook County, 56 Ill App2d 436, 206 NE2d 441, and Sgro v. Howarth, 54 Ill App2d 1, 203 NE2d 173.

This division sitting in its own district held that there was no substantial change in position in spending $325 for a plat plan, $400 in office help and $200 for telephone calls. Naumovich v. Howarth, 92 Ill App2d 134, 234 NE2d 185. See also People ex rel. Nat. Bank of Austin v. Cook County, 56 Ill App2d 436, 206 NE2d 441.

■ The Supreme Court has stated that each case actually must be decided upon its own merits and that the burden is on the party attacking the ordinance to establish the invalidity thereof. County of Lake v. MacNeal, 24 Ill2d 253, 181 NE2d 85.

Plaintiffs argue that the enforcement of the ordinance as to the 20-foot parcel will deprive them of a vested right to continue the nonconforming use established as to the apartment building. No facts in the record demonstrate such result. In the cases cited by plaintiffs the use of the immediate property to which the nonconforming use was attached was affected. There is reliance primarily upon Village of Skokie v. Almendinger, 5 Ill App2d 522, 126 NE2d 421. The primary issue there decided is that title is not essential to determining the existence of a nonconforming use of land. In the aspect that the case holds that there was an unreasonable taking of a nonconforming use, the land to which said nonconforming use attached was directly affected in that its use was substantially destroyed. Here, there is no evidence that the use of the apartment building will be altered or

reduced. See also People v. Ferris, 18 Ill App2d 346, 152 NE2d 183. The issues decided in the cited Douglas v. Village of Melrose Park, 389 Ill 98, 58 NE2d 864, and Brown v. Gerhardt, 5 Ill2d 106, 125 NE2d 53, were whether or not there had been abandonment of nonconforming uses.

▇ Plaintiffs argue that enforcement of the ordinance is arbitrary, unreasonable and without necessity in public welfare or safety from testimony that there are areas of off-street parking at distances from one-half block to three blocks from the real estate in question. Such facilities include a parking area for the Athletic Department of Northwestern University, and an area adjacent to a railroad. They are not only relatively remote in distance, but no right to the use of such areas by tenants of plaintiffs is established. The ordinance of 1960 in effect at the time of the application for the first building permit required ownership or contractual arrangement for a use of parking spaces to be secured and continuously maintained for the life of the building. The testimony is, at best, vague and speculative. If the reasonableness of the ordinance is fairly debatable, the courts will not intervene. County of Lake v. MacNeal, 24 Ill2d 253, 181 NE2d 85.

The trial court refused to admit plaintiffs' proffered testimony, apparently purporting to be of an expert quality, to the effect that persons using the apartment units did not own, or use, many automobiles. Such testimony is not of a stature to overcome, in this Court, the legislative judgment expressed in the several ordinances pleaded.

▇ Finding no abuse of discretion in the court below, its judgment is affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.