Asbury THOMAS

v.

The ZONING BOARD OF APPEALS OF the CITY OF BANGOR, Maine and Crawford D. Kinney, et al.

Supreme Judicial Court of Maine.

Jan. 12, 1978.

644

Twitchell, Gray & Linscott by Orman G. Twitchell (orally), Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), Eaton, Peabody, Bradford & Veague by John E. McKay, Robert E. Miller, Bangor, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

On May 28, 1974, pursuant to the "Zoning Ordinance of the City of Bangor" as adopted on December 2, 1940 (and revised on January 7, 1954 and October 24, 1960), plaintiff Asbury Thomas filed with the Inspector of Buildings an application for a permit to develop an overnight campground in a Bangor agricultural zone. The development was to consist of 49 camp sites and an office and service building for general use by trailer camps, as well as trailers and structures for temporary residence purposes. The Building Inspector denied the application, and plaintiff appealed to the defendant Bangor Zoning Board of Appeals. A public hearing was held on June 26, 1974, after which the Board refused to issue plaintiff a permit.

Plaintiff instituted a timely proceeding for judicial review of the Board's decision by the Superior Court. (Rule 80B M.R. Civ.P.)[1] On February 12, 1976 the Superior Court having reviewed the rights of the parties under the 1940 Zoning Ordinance, ordered entry of judgment for defendants.

1. In the proceedings in the Superior Court the City of Bangor was added as a party defendant. Neighboring landowners, Clara Striar, David Striar, Crawford D. Kinney, Gerald Ballanger, Vaughn E. Smith, Walter J. Constantine, Alice W. Wellman, Barbara P. Hess, John A. Ordway, Janet E. Ordway, and Philip G. Hunter were allowed to intervene as defendants.

We now have before us plaintiff's appeal from that judgment.

The appeal raises various constitutional objections with respect to the 1940 Bangor Zoning Ordinance and the action of the Zoning Board of Appeals. However, we reach none of the issues raised by plaintiff since we conclude that the case had become moot while it was pending before the Superior Court and should have been dismissed.

Before February 12, 1976 when the Superior Court rendered its decision in favor of defendants on the basis of the rights of the parties under the 1940 Bangor Zoning Ordinance, that Ordinance had been repealed and replaced by a new Zoning Ordinance, effective October 4, 1974. By the terms of the new Ordinance the 1940 Ordinance continued in effect *only* for "the trial and punishment of all past violations of it and for recovery of penalties and forfeitures already incurred."[2] Thus, the scheme and structure of the new Ordinance rendered the Ordinance of 1940 inapplicable to applications for permits which had been decided prior to October 4, 1974.

█ As a threshold issue, we must determine whether enactment of the new Ordinance resulted in substantial substantive changes in the applicable zoning laws relevant to plaintiff's proposed development. If there were such significant changes in the substance of the Ordinances having bearing upon plaintiff's application for a special exception, provided that no vested rights were impaired, the changes would obviate the gravamen of the controversy concerning plaintiff's permit application and the Board's past actions with respect thereto.

2. The new Ordinance also barred abrogation of any "rule, regulation or permit" previously issued pursuant to law.

3. The permit application proposed to "develop an overnight campground consisting of 49 camp sites serviced by water and electricity and access roadways, together with an office and service building located on 19.4± acres of land . . . for general use by trailer camps, trailers and structures for temporary resident purposes as more specifically authorized under the provisions of Articles 12, Sec. 2 of the Zoning Ordinances [of 1940] of the City of

The new Ordinance does impose substantially different and more stringent construction and development standards than the Zoning Ordinance of 1940. The Ordinance of 1940, upon which plaintiff specifically based his application and his appeals to the Zoning Board and the Superior Court, provided that "overnight camps, trailer camps, trailers, and structures for temporary residence purposes otherwise excluded may be erected, altered, and used on approval of the Board of Appeals."[3] The criteria governing "special exception" or "approval" applications under that Ordinance provided only limited general standards to guide the Board's determinations. As the only guide to the Board's actions relative to exceptions permitted upon approval by the Board, the Ordinance of 1940 provided:

"The Board shall always act with due consideration to promoting health, safety, and the general welfare, encouraging the most appropriate use of land, and conserving property value, shall not permit any building and/or use detrimental or injurious to the neighborhood, and may, in passing upon appeals or in granting a permit or certificate of occupancy whenever it is provided in this ordinance that the approval of the Board of Appeals is required, prescribe appropriate conditions and safeguards in each case."

The new Ordinance, in contrast, established specific and elaborate standards with respect to the Board's evaluation of special exception applications. Specifically, the new Ordinance provided:

"Before the Planning Board shall grant a special exception, it shall have determined:

Bangor." Although the Ordinance of 1940 specifically allowed, subject to Board approval, "overnight camps, trailer camps, trailers, and structures for temporary residence purposes," the new Ordinance allows, as a special exception subject to Board approval, "tenting and camping areas" (and "mobile home parks" which are subject to the requirements of a separate ordinance). The scope of the special exceptions under the new Ordinance, therefore, may not encompass as broad a category as that to which the application refers.

"(a) That the requirements of the zone in which the property in question is located have been complied with.

"(b) That the proposed use, although not generally appropriate in the zone for which it is sought, is appropriate for the location for which it is sought because of the peculiar physical characteristics of that location.

"(c) That the proposed use will conform to the general character of the neighborhood in which the use would be located.

"(d) That there would be no significant adverse effect resulting from such use upon the public health, safety and general welfare of the neighborhood in which the use would be located.

"(e) That the proposed use will not have an unduly adverse effect upon the property values of adjacent properties.

"(f) That the proposed use will not place an undue burden on municipal services.

"(g) That the proposed use will not create unreasonable traffic congestion on contiguous or adjacent streets.

"(h) That the proper operation of the special exception will be insured by providing and maintaining adequate and appropriate utilities, drainage, access, parking and loading and other necessary site improvements."

In addition, all "special exception" permits are subject to site plan approval standards, which require that:

"When reviewing any site plan for approval, the Planning Board shall consider the following features, and before granting approval, shall determine that the proposed site plan is adequate and suitable to promote the intent and purpose of this Ordinance:

"(a) Location and arrangement of off-street parking and loading areas and their appurtenant drives and maneuvering areas

"(b) Location of access drives to the lot from the street, including in the case of corner lots, the possible limitation of access from one street only

"(c) Drainage channels

"(d) Location of areas of outdoor display and storage

"(e) Location, intensity, type, size and direction of outdoor lighting

"(f) Screening

"(g) Landscaping of unpaved areas or other treatment of the site

"(i) Location of a building insofar as it directly affects any of the features listed above

"(j) Effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas

"(k) Whenever situated, in whole or in part, within 250 feet of any pond, lake, river, stream or tidal waters, will not adversely affect the quality of such body of water or unreasonably affect the shoreline of such body of water."

■ The principle is well-established that legislation passed during the course of litigation may render moot, or unnecessary, a determination of a former controversy by supplanting the gravamen of the complaint. *Berry v. Daigle*, Me., 322 A.2d 320, 328 (1974). Here, the new Ordinance clearly establishes additional, more specific criteria with which a special permit application must comply in order to merit approval by the Board. We conclude, then, as a matter of construction, that the new Zoning Ordinance presents substantially new and different issues which must be submitted in the first instance to the jurisdiction of the Bangor Planning Board.[4] Hence, if no right of plaintiff became vested under the old Ordinance, plaintiff's application and the Zoning Board's action on it, all directed

4. Plaintiff stated in proceedings before the Superior Court that if he is to prevail it will be under the old Ordinance. The record suggests that plaintiff also unsuccessfully filed a permit application under the new Ordinance, and plaintiff did not appeal from that separate, adverse determination. We now express no opinion concerning the legality of the Board's ac-

tion with respect to the application, noting only that if plaintiff is not precluded from again seeking a permit under the new ordinance, the Board would now have before it our decision in *Community School, Inc. v. Zoning Board of Appeals of the Town of Camden*, Me., 369 A.2d 1146 (1977) which was not available at the time of the Board's earlier decisions.

to the since repealed Ordinance of 1940, have lost the characteristics of a live controversy and have become moot.

 The question remaining, then, is whether plaintiff had achieved vested rights under the 1940 Zoning Ordinance.

As a general rule,

"neither the filing of an application for a building permit nor the issuance of a building permit, although valid and issued in conformity with the provisions of the zoning ordinance, alone confers any rights in the applicant or permittee as against a change in the zoning ordinance which imposes further limitations upon the use or structure proposed." 2 *Rathkopf,* The Law of Zoning and Planning, ch. 57, § 1 at 57–2 to 57–4 (3rd ed.)

quoted in *Malmar Associates v. Board of County Commissioners for Prince George's County,* 260 Md. 292, 272 A.2d 6, 15 (1971). See generally Annot., 50 A.L.R.3d 596 (1973). Existing zoning classifications create no vested rights in a property owner because "all property is held in subordination to the police power." *R. A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 289 A.2d 646, 648 (1972). Vested rights do not accrue upon the filing of a permit application prior to amendment of a zoning ordinance even when the failure to grant the requested permit is "palpably invalid" *Caputo v. Board of Appeals,* 330 Mass. 107, 111 N.E.2d 674, 676 (1953), or when the rezoning occurs during the pendency of appellate proceedings which seek to establish that at the time of the initial action the applicant was entitled to a permit. See *Paliotto v. Dickerson,* 22 A.D.2d 929, 256 N.Y.S.2d 55 (1964); *Crecca v. Nucera,* 52 N.J.Super. 279, 145 A.2d 477 (1958); *Caputo v. Board of Appeals,* supra.

 We recognize that vested rights may be deemed acquired on the basis of various kinds of equitable considerations. For example, an applicant for a building permit may acquire vested rights to such a permit by virtue of a substantial good faith change made in reliance on the zoning law in effect at the time of the application, or on the probability of the issuance of a permit approval. However, preliminary expenditures, similar to those made here by plaintiff, for surveys and architect's plans relating to the application process do not establish vested rights. *Gosselin v. City of Nashua,* 114 N.H. 447, 321 A.2d 593 (1974); *Hoerdt v. Evanston,* 99 Ill.App.2d 307, 241 N.E.2d 685 (1968), cert. den., 395 U.S. 944, 89 S.Ct. 2016, 23 L.Ed.2d 462 (1969); *Crecca v. Nucera,* supra; cf. *Boutet v. Planning Board of the City of Saco,* Me., 253 A.2d 53 (1969).

██ An applicant may also obtain vested rights when a municipality wrongfully delays in passing on the application until after the effective date of the new Ordinance or arbitrarily fails to perform a ministerial duty to issue a permit to which the applicant was entitled. *Ben Lomond, Inc. v. Idaho Falls,* 92 Idaho 595, 448 P.2d 209 (1968). Furthermore, a bad faith or discriminatory enactment of a zoning ordinance for the purpose of preventing a legal use by the applicant may confer vested rights on the applicant. See *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 211 A.2d 514 (1965); *Anderson v. City Council of Pleasant Hill,* 229 Cal.App.2d 79, 40 Cal. Rptr. 41 (1964).

Here, there is no indication of bad faith by the municipality or the Zoning Board. The Bangor Planning Department had been working on a new Ordinance since 1968. Draft proposals for the new Ordinance reached the Bangor City Council on June 10, 1974, just twelve days after plaintiff's initial application. The new Ordinance constituted a total revision of every aspect of the old Zoning Ordinance and plainly was not directed to plaintiff's application. In addition, the Zoning Board engaged in no delaying tactics; indeed, after denying the application, the Building Inspector immediately referred the matter to the next Zoning Board meeting, less than a month later. The actual repeal of the Zoning Ordinance and enactment of the new Ordinance did not occur until almost three months after denial of plaintiff's application under the old Ordinance.

In sum, the Zoning Ordinance in effect in Bangor since October 4, 1974 had rendered moot the case plaintiff brought to the Superior Court pursuant to Rule 80B M.R.Civ.P.

Although plaintiff's application had in fact become moot prior to the date, February 12, 1976, when the Justice presiding in the Superior Court ruled *on the merits* of the 80B review before him, as based on the 1940 Ordinance, the Justice was not then aware of the fact of mootness. The facts which rendered the case moot were first brought to his attention after the appeal to this Court had been instituted.

In the circumstances we must sustain plaintiff's appeal, not as a means to provide benefit to plaintiff but rather to enable us to set aside the Superior Court judgment purporting to decide the merits of the controversy and to order the case remanded to the Superior Court with instructions that it order entry of judgment dismissing as moot plaintiff's Rule 80B proceeding for judicial review.

The entry is:

Appeal sustained; the judgment for defendants is set aside; case remanded to the Superior Court with directions that the Superior Court order entry of judgment dismissing as moot plaintiff's proceeding for review pursuant to Rule 80B M.R.Civ.P.

· POMEROY, ARCHIBALD and GODFREY, JJ., and DUFRESNE, A. R. J., concurring.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.