**AMERICAN INSURANCE ASSOCIATION,**
**Petitioner,**

**v.**

**STATE INDUSTRIAL COMMISSION and Associated Motor Carriers, Self Insurance Association, Respondent.**

**No. 59963.**

Supreme Court of Oklahoma.

Nov. 3, 1987.

---

**19.** *Id.* at 820–21.

Larry Derryberry, Derryberry, Duncan, Gray & Quigley, Oklahoma City, for petitioner.

Francis S. Irvine, Horace G. Rhodes, Don J. Gutteridge, Jr., Kerr, Irvine & Rhodes, Oklahoma City, for respondent.

Gary Payne, Oklahoma City, for amicus curiae Alliance of American Insurers.

Robert Henry, Henry, Henry & Henry, Shawnee, for amicus curiae.

OPALA, Justice.

The dispositive issue—resolved here by an affirmative answer—is whether after-enacted legislation, 85 O.S.Supp. 1984 §§ 61 and 177 and 85 O.S.Supp. 1986 §§ 61, 66.2 and 149.2,[1] has either rendered moot the issues sought to be presented for our review or, at least, requires that they be reconsidered below.

Respondent, Associated Motor Carriers Self-Insurance Association [Motor Carriers], applied to the Workers' Compensation Court for a license as a group self-insurance association pursuant to the terms of 85 O.S.1981 § 149.1.[2] That statute authorizes the Workers' Compensation Court to regulate group self-insurance associations and to adopt rules and procedures governing their establishment.[3] Shortly after the Act's passage, the Attorney General issued an opinion finding the legislation was constitutionally infirm.[4] The Workers' Compensation Court then deferred consideration of Motor Carriers' application.

Some time later, Petitioner, American Insurance Association [American], which asserted an interest in Motor Carriers' application for a license that would pool its

---

**1.** The terms of 85 O.S.Supp.1986 § 61 provide in pertinent part:

"An employer shall secure compensation to his employees in in one of the following ways:

(d) By furnishing satisfactory proof to the Administrator of the employer's financial ability to pay such compensation. The Administrator, pursuant to rules adopted by the Court for an individual self-insured or own risk carrier or *a group pool association,* shall require an employer that has: * * *

(e) The provisions of this title shall not be construed to limit or restrict the ability of political subdivisions of this state or employers subject to the provisions of the Workers' Compensation Act from joining together to form *group pool associations* pursuant to law or rules promulgated by the Court." [Emphasis supplied.]

The terms of 85 O.S.Supp.1986 § 66.2 provide in pertinent part:

"A. There is hereby created the 'Group Self-Insurance Association Guaranty Fund Board'. The Board shall have supervision over the administration and operation of the Group Self-Insurance Association Guaranty Fund." Subdivision B of § 66.2 pertains to the membership of the Board; Subdivisions C—I prescribe procedures for funding the Group Self-Insurance Association Guaranty Fund and for making claims against it.

The terms of 85 O.S.Supp.1986 § 149.2 provide:

"The Workers' Compensation Court shall adopt rules permitting two or more group self-insurance associations to pool their liabilities under this act for the purpose of providing such group self-insurance associations specific and aggregate excess insurance."

**2.** The terms of 85 O.S.1981 § 149.1 provide:

"The Worker's Compensation Court shall adopt rules permitting two or more employers not otherwise subject to the provisions of Section 149 of Title 85 of the Oklahoma statutes to pool together liabilities under this Act for the purpose of qualifying as a group self-insurer and each such employer shall be classified as a self-insurer."

By this statute the legislature gave the Workers' Compensation Court certain rule-making powers and placed in it authority to regulate the new group self-insurance associations.

**3.** Motor Carriers applied for a license as a group self-insurance association pursuant to Rule 39 of the Workers' Compensation. Rule 39, § 4, 85 O.S.1981, Ch. 4, App., provides in pertinent part:

"Application for Approval as Group Self-Insurance Association Requirements ... Two or more employers having a common interest ... may be approved by the Court as a group self-insurance association for the purpose of entering into agreements to pool their liabilities under the act...."

**4.** See Attorney's General Opinion No. 82–186 (October 25, 1982). The Attorney General opined that § 149.1—which authorizes the Workers' Compensation Court to adopt rules permitting two or more employers to pool together liabilities for the purpose of qualifying as a group self-insurer—is a product of unconstitutional delegation of legislative power to the judiciary since the Act fails to express either the lawmakers' policy or any other guidelines for the Workers' Compensation Court to follow.

members' resources to meet their workers' compensation obligation, was allowed to intervene and to challenge the validity of the pertinent statute. American, a trade association composed of insurance companies writing workers' compensation coverage, premised its standing to intervene upon a claim to representing the public's interest. Its attack on § 149.1 rested below upon four grounds.[5]

The Workers' Compensation Court en banc upheld the constitutionality of § 149.1 and approved the Motor Carriers' application for a license as a group self-insurance association. American, urging the same attack as that advanced in the trial tribunal, now seeks review of the licensing order.

During the pendency of this proceeding additional provisions, which regulate group self-insurance, were passed in 1984 and 1986 and one of these was later amended in 1986, *although § 149.1 has remained in force in its original verbal form.*[6] All these after-enacted statutes dealt with the same subject as does § 149.1—the regulation of group self-insurance associations.

The initial question we must determine is whether the controversy sought to be presented has been rendered moot, in whole or in part, by the passage of after-enacted legislation.[7] It is a long-established rule that this court will not consume its time in deciding "abstract propositions of law" or moot cases. Nay, it is without cognizance to reach them for resolution.[8]

---

**5.** American grounded its attack on 85 O.S.1981 § 149.1 upon four separate arguments: (1) The granting to the Workers' Compensation Court of power constitutionally vested in the executive branch is a violation of the Oklahoma Constitution. (2) The title to 85 O.S. 1981 § 149.1 is defective because it does not reflect the substance of the enactment. (3) House Bill 1259, of which § 149.1 was a part, contains diverse and unconnected topics and is hence violative of Art. V § 57, Okl.Const. (4) Section 149.1 does not provide sufficient standards to guide the Workers' Compensation Court in exercising its delegated power.

**6.** The after-enacted legislation, 85 O.S. Supp. 1984 §§ 61 and 177 and 85 O.S.Supp.1986 §§ 61, 66.2, 149.2 and 177, covers the very same area of regulation for self-insurance associations as did the earlier statute, 85 O.S.1981 § 149.1. The latter is the target of American's constitutional attack.

The title to the 1984 amendatory statutes, 85 O.S. Supp. 1984 §§ 61 and 177 (Okl.Sess.L.1984, Ch. 258), sets forth in greater detail the ambit of the enactment:

"AN ACT RELATING TO WORKERS' COMPENSATION; AMENDING 85 O.S. 1981, SECTIONS 61 AND 177, AS AMENDED BY SECTION 7, CHAPTER 271, O.S.L.1982 (85 O.S. SUPP.1983, SECTION 177); PROVIDING CERTAIN WAYS THAT AN EMPLOYER MAY INSURE AGAINST LIABILITY; PERMITTING SELF-INSURANCE IN CERTAIN SITUATIONS; MODIFYING RESTRICTIONS; PROVIDING FOR PENALTY; *PROVIDING FOR GROUP POOL ASSOCIATIONS;* PROVIDING FOR THE WORKERS' COMPENSATION ADMINISTRATION FUND; MODIFYING USE OF THE FUND; PROVIDING CERTAIN PROCEDURES; PROVIDING FOR TRANSFER OF CERTAIN MONIES; PROVID-

ING OPERATIVE DATES; AND DECLARING AN EMERGENCY." [Emphasis supplied.]
See also the title to the 1986 amendatory statutes, 85 O.S.Supp.1986 §§ 61, 66.2 and 149.2 (Okl.Sess.L.1986, Ch. 222) which reflects in pertinent part:
"* * * CREATING THE INDIVIDUAL SELF-INSURED GUARANTY FUND BOARD AND THE *GROUP SELF-INSURANCE ASSOCIATION GUARANTY FUND BOARD; PROVIDING PROCEDURES RELATED THERETO;* * * *"

**7.** A case can become moot *by reason of new or amendatory legislation which supersedes existing legislation.* See *Thomas v. Zoning Bd. of Appeals, Etc.,* 381 A.2d 643, 646–647 [Me.1978] and *James v. City of Round Rock,* 630 S.W.2d 466, 468 [Tex.App.1982].
As a general rule, an action will be dismissed if the issues are or have become moot. A case is moot when the issue sought to be resolved has become abstract and hypothetical—no longer part of a lively "case or controversy" between antagonistic demands. *Lawrence v. Cleveland County Home Loan Auth.,* Okl., 626 P.2d 314, 315 [1981]. Although there are two well-recognized exceptions to the doctrine—public-interest and the likelihood-of-recurrence exceptions—which have met with our approbation, *Lawrence, supra; Payne v. Jones,* 193 Okl. 609, 146 P.2d 113, 116–117 [1944] and *Peppers Refining Co. v. Corporation Commission,* 198 Okl. 451, 179 P.2d 899, 901 [1947], neither of them is properly invocable here as a basis for securing appellate review. See *Westinghouse Elec. v. Grand River Dam Auth.,* Okl., 720 P.2d 713, 720 [1986].

**8.** *Greer County Election Board v. Elliott,* 26 Okl. 546, 109 P. 731, 732 [1910]; *Webb v. Oklahoma Gas & Electric Co.,* 88 Okl. 183, 211 P. 932 [1923]; *Goldsmith v. City of Ardmore,* 136 Okl. 201, 277 P. 230, 231 [1929]; *Maxwell v. City of*

The principle of repeal by implication, though not favored in law inasmuch as *all* statutory provisions *must* be given effect, if possible,[9] may nonetheless be invoked whenever (a) the later statute covers the whole subject matter of the earlier statute [10] and contains new provisions showing that it was a substitute for the earlier act, even though it did not include words to that effect,[11] or (b) when the later statute is repugnant to, or inconsistent with, an earlier statute.[12] Although the terms of 85 O.S.1981 § 149.1 were left unchanged by the 1984 and 1986 enactments which govern group self-insurance associations, the continued viability of the earlier statute's provisions, either in whole or in part, presents, in the face of later-enacted legislation dealing with the same subject, an issue that must be in the first instance tendered to, and resolved by, the trial tribunal.

Unless there be present on review some *property or liberty interest* which requires that we apply to the accrued or vested rights in controversy the law in force at a fixed point in time that is anterior to its most recent change,[13] an amendment of controlling statutory law between

nisi prius and appellate decisions compels the appellate court to apply the latest version of the pertinent law.[14] It is quite apparent that all the post-§ 149.1 enactments on the subject here in contest were clearly the legislature's effort to cure whatever defects the Attorney General identified in his 1982 opinion. The later-enacted provisions appear to occupy the same subject matter and genus as does the challenged statute, § 149.1. This proceeding may indeed be moot, in whole or in part, though we are not free to ascertain what, if any, aspect of the past contest remains alive in light of the most recent statutory changes that are now in force. Even if *not* every one of the multiple arguments American had advanced in mounting its constitutional attack below were to be deemed mooted by after-enacted legislation, still the intervening changes in statutory law inexorably require that the entire dispute be reassessed by the trial tribunal and all constitutional challenges be reconsidered in light of the comprehensive statutory post-decisional addenda.[15]

The trial tribunal's order is accordingly vacated and the cause remanded with di-

*Tulsa,* 145 Okl. 155, 292 P. 66 [1930]; *Westgate Oil Co. v. Refiners Production Co.,* 172 Okl. 260, 44 P.2d 993 [1935]; *Christensen v. Quality Oil Co.,* 205 Okl. 212, 236 P.2d 673 [1951]; *Dutton v. City of Oklahoma City,* 208 Okl. 208, 254 P.2d 995 [1953]; *Duncan v. Sims,* Okl., 277 P.2d 145, 146 [1954]; *Post v. Kingdom Hall of Jehovah's Witnesses,* Okl., 283 P.2d 528, 529 [1955] and *Lawrence v. Cleveland County Home Loan Authority,* Okl., 626 P.2d 314–316 [1981].

9. *Citicorp. Sav. & Trust Co. v. Banking Bd.,* Okl., 704 P.2d 490, 494 [1985]; *City of Sand Springs v. Dept. of Pub. Wel.,* Okl., 608 P.2d 1139, 1151 [1980]; *Ex parte Burns,* 80 Okl.Cr. 270, 202 P.2d 433, 435 [1949]; *Smith v. State Board of Education,* 190 Okl. 556, 126 P.2d 241, 242 [1942] and *Ritchie v. Raines,* Okl.Cr., 374 P.2d 772, 775–776 [1962].

10. After-enacted legislation may have the effect of occupying the entire field of the subject covered by an earlier statute. *State v. Empire Oil Corporation,* Okl., 353 P.2d 130, 134 [1960]; *In re Layman's Estate,* 208 Okl. 174, 254 P.2d 784, 786 [1953]; see also, *Creek County v. Robinson,* 114 Okl. 163, 245 P. 584, 586 [1926]; *City of Pawhuska v. Pawhuska Oil & Gas Co.,* 64 Okl. 214, 166 P. 1058, 1060 [1917] and *Consumers*

*Co-op Ass'n v. Titus,* 201 Okl. 344, 205 P.2d 1162, 1163, [1949].

11. *Ritchie v. Raines, supra* note 9, and *Ex parte Burns, supra* note 9.

12. *In re Layman's Estate, supra* note 10 at 786; *Ritchie v. Raines, supra* note 9 and *City of Sand Springs v. Dept. of Pub. Wel., supra* note 9.

13. See Art. 5 §§ 52 and 54, Okl.Const; see in this connection *First National Bank of Pauls Valley v. Crudup,* Okl., 656 P.2d 914, 916–917 [1983].

14. *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.,* 404 U.S. 412, 414–415, 92 S.Ct. 574, 575–576, 30 L.Ed.2d 567 [1972] and *Thorpe v. Housing Authority of City of Durham,* 393 U.S. 268, 282–283, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 [1969].

15. An appellate forum cannot exercise first-instance jurisdiction by making initial decisions on facts or law. When necessary findings are absent, the case must be remanded with directions that they be made by the trial court. *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 [1955] and *Matter of Estate of Bartlett,* Okl., 680 P.2d 369, 377 [1984]; see also *Thomas v. Zoning Bd. of Appeals, supra* note 7 at 646.

rections to afford the petitioner (American) *full* opportunity to recast its challenges and direct its arguments to § 149.1, to be construed together with all pertinent after-enacted legislative provisions.[16]

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS, KAUGER and SUMMERS, JJ., concur.

---

**16.** We do not pass here on the constitutionality either of § 149.1 or of the later-passed provisions. Claims based upon potential invasion of rights by later-enacted legislation are not enough to warrant judicial intervention. *State of Arizona v. State of California,* 283 U.S. 423, 462, 51 S.Ct. 522, 528, 75 L.Ed. 1154, 1169 [1931].