**Donald LIPPOTH**

v.

**ZONING BOARD OF APPEALS, CITY OF SOUTH PORTLAND and Elzada M. Frost.**

Supreme Judicial Court of Maine.

Nov. 13, 1973.

---

Reef & Mooers, by Daniel W. Mooers, Portland, for plaintiff.

Drummond, Wescott & Woodsum, by David Plimpton, Hugh G. E. MacMahon, Henry Steinfeld, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

ARCHIBALD, Justice.

Plaintiff is a resident owner of real estate in South Portland. Desiring to construct a garage on this property he applied to the South Portland Zoning Board of Appeals requesting a variance from the "set back" provisions of the Zoning Ordinance assigning the following reasons:

"To get cars off st. To allow emergency vehicles to pass and to alleviate park-

ing problems for the two houses beyond my property. A variance is requested for set back requirements."

After due notice a hearing was held at which appellant Elzada M. Frost, an abutting land owner, appeared in opposition.

The Zoning Board of Appeals denied the request, using this language:

"Permit denied. The board, after due deliberation and after viewing the scene itself, and in conformity with the guide lines established by the Zoning Ordinance, hereby denies the application for the appeal on the grounds that the said application would create in the opinion of the board, a traffic hazard and impede emergency vehicles in passage through the said street."

Following the requirements of Rule 80B, M.R.C.P. the Plaintiff appealed to the Superior Court. A motion was then filed by Elzada M. Frost for leave to intervene as a party defendant, which motion was allowed without objection.[1]

A Justice of the Superior Court, after full hearing and after finding that the "South Portland Zoning Board of Appeals acted unreasonably and without factual or legal justification in denying the Plaintiff's application for a variance", sustained the Plaintiff's appeal and ordered the variance granted. The Defendant-Intervenor seasonably appealed. We sustain the appeal.

The city ordinance required building set backs so that a minimum front yard dimension of 20' be maintained, and that not more than 25% of the lot be occupied by the principal buildings thereon. The ordinance authorized the Zoning Board of Appeals to permit "variations from the regulations so as to grant reasonable use of property when necessary to avoid undue hardship and without substantially departing from the intent of plans and regulations of this ordinance." Where "[v]ehicular access, circulation and parking" is involved in a requested variance, the Zoning Board of Appeals is directed to consider, as a criterion, whether "the proposed use [will] generate unusual traffic conditions affecting the general neighborhood."

The Zoning Board had the benefit of the Plaintiff's plan for the addition to his house. This house, acquired in 1966, is situated on Lot # 55, which has an easterly frontage of not more than 65' 6". The dwelling is located more on the northerly side of the lot than on the southerly and faces generally easterly. The northeasterly corner of the building is approximately 8' from the easterly lot line, the southeasterly corner being 20' therefrom because the house was not constructed with its easterly side parallel to the easterly lot line. A basement garage is on the southerly side of the house.

The Plaintiff proposed to add to the existing structure by building a garage 22' in width and utilizing the existing basement garage area. The addition, as planned, would require the north wall to be extended toward the easterly lot line 13', the east wall to be 22' wide and to contain two 9' doors. When completed, the northeasterly corner of the extension would be not more than 4' from the lot line and the southeasterly corner approximately 11' therefrom. It is thus clear that the planned expansion would be in clear violation of the front yard provision of the ordinance,[2] and, in

---

1. From the pleading accompanying the motion to intervene it is clear that the motion was properly granted. The relief sought in the 80B appeal could "as a practical matter", if granted, have an adverse effect on Mrs. Frost as an adjoining land owner and user of the street involved. Rule 24(a) M.R.C.P.

2. It is not clear whether the original zoning ordinance contained a front yard limitation as did the present enactment effective February 26, 1968. We must assume that the Plaintiff's existing front yard, although non-conforming, existed prior to the adoption of the ordinance, and may, under Article VII, 9–7–3.1, be continued lawfully until abandoned for more than one year.

effect, would allow the exacerbation of an existing non-conforming use.

While it is not clear whether access to and beyond Lot # 55 is on an accepted public street, the route actually used by the Plaintiff and by the occupants of two houses further northerly is a narrow paved way running between Plaintiff's easterly line and the ocean.

The Zoning Board of Appeals heard the Plaintiff make this statement:

"We have three cars and ½ car garage. The neighbors beyond us have two cars and the ones beyond that have an additional two cars. We have tolerated this situation through 4 winters now and there is a definite emergency problem. Last winter there was an elderly gentleman who was ill and a path had to be open at all times and there were times when I had to be called in the middle of the night to move my cars for ambulances etc. Our cars have been hit because there is not enough room up through there. I propose to put the garage in the front of the house and an additional one along side thus allowing plenty of room for my neighbor to get out in the night if they need to. I would excavate and it would be no higher than the boards already on the garage door. My cars would then be off the street."

.    .    .    .    .    .

[Board Member]:  .  .  .  "Your cars were in the street before but you have room enough to park off the street or you wouldn't be able to build the garage.

Mr. Lippoth: I can't stop all the problems but my cars would be protected. But it's mostly because emergency vehicles can't get beyond my house unless I move my cars.

[Board Member]: You're going out 13 ft.  (yes)

Mr. Lippoth: Present plans for the proposed garage are here. (Mr. Lippoth displayed the plans and explained them [sic] the board members)"

Additionally, counsel for Mrs. Frost made a statement to the Board pointing out Plaintiff's failure to prove undue hardship, that the proposed structure would "cut off" at least a part of Mrs. Frost's view of the ocean, and that, because the Plaintiff had a minimum front yard, "[a]nything extending over 10′ or 12′ will be in the right of way which could be illegal and improper to the property rights of others."

At the appellate hearing below facts were presented dealing with the hardships caused the Plaintiff by the lack of a garage in which to house his vehicles. We summarize these contentions.

1.  Because the house is "starting to sag" and requires "lally columns" for support, the existing basement cannot be used as a garage.

2.  Lack of both sufficient rear yard area and adequate access thereto prevent a garage being constructed on the westerly, or rear, portion of the lot.

3.  Plaintiff's health makes it difficult to park and move cars left outdoors, in addition to starting them in cold weather.

4.  The Plaintiff and his family use three vehicles, which accentuate his parking problems, particularly during the winter season when snowplowing is required.

5.  The Plaintiff does not wish to sell his property because he now has mortgage insurance and, due to his health, he would not be eligible for this on a new mortgage.

As stated by the appellant, the issues emerging are these:

1.  Did the Superior Court err in concluding that the variance should be granted on the grounds of undue hardship?

2.  Did the Superior Court err in concluding that the Board acted unreasonably in denying the variance?

Initially, we must consider what issues were properly before the Superior Court in the 80B proceeding. The law is clear that it is error "to adjudicate on appeal an issue which was not litigated before the Board." Moyer v. Board of Zoning Appeals, Me., 233 A.2d 311, 316; Cunningham v. Planning Board, 4 A.D.2d 313, 164 N.Y.S.2d 601 (1957); 101 C.J.S. Zoning § 329, at 1138.

We must assume that the Zoning Board, in its decision, considered that the requested variance would accentuate, rather than alleviate, parking and traffic problems. It is further tacit to this finding that the Zoning Board concluded either (1) that the variance would not be effective in "get-[ting] cars off st." or (2) that the inability of the Plaintiff to do so did not impose an "undue hardship" upon him, in the context that this term is used in the zoning law.[3]

This court, in Lovely v. Zoning Bd. of App. of City of Presque Isle, 259 A.2d 666, 669 (Me.1969) adopted the concept of "undue hardship" said to be the majority rule, namely:

" 'Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.' "

We fail to see where the Board had any evidence before it upon which it could find that the failure to alleviate parking problems for the "two houses beyond my property" caused "undue hardship" to the Plaintiff. Since neither the application for a variance, nor the evidence before the Board, raised the issue of personal hardship because cars would have to be moved by the Plaintiff to allow access to his neighbors' properties, such evidence, although presented *in the Superior Court,* could not properly support the 80B appeal. Neither does the record show that the Board had any knowledge of the Plaintiff's physical condition. However, *assuming* it did, such evidence does not establish "undue hardship" in a legal sense. The alleged hardship arises from the ownership of three cars, a non-conforming front yard area, an unusable basement garage and the Plaintiff's deteriorated physical condition. The set back requirements of the zoning ordinance do not impose any unique hardship on this particular lot not generally imposed on other lots within the same residential zone. The evidence presented of "undue hardship" does not meet any one of the criteria set forth in *Lovely. See also* Highland Park, Inc. v. Zoning Board of Appeals of the Town of North Haven, 155 Conn. 40, 229 A.2d 356 (1967); Application of Enokay, Inc., 407 Pa. 593, 181 A.2d 842 (1962); Planning Board of Springfield v. Board of Appeals, 338 Mass. 160, 154 N.E. 2d 349 (1958).

We also feel that the Justice below went beyond the scope of review permissible in zoning board appeals and, in a real sense, conducted a de novo type hearing. For example, the Justice stated: "The Plaintiff, already doing the best he can with an undersized parking facility, is about to lose even that inadequate space because of the necessity of putting support columns under his house." Consideration was also given

---

3. Although the decision of the Zoning Board was based on other reasons, we note that Article VII has the following provisions:
"9–7–1    Off Street Parking
9–7–1.1    In all districts off-street parking space shall be provided in connection with the original erection or increase by units or dimensions of any building or structure in the following amounts:
9–7–1.1.1  For residential structures two parking spaces per dwelling unit."
The lot plan with the proposed addition makes it clear that compliance could not be had with Sec. 9–7–1.1.1.

to the location of garages "in the same neighborhood" and the minimal effect of the proposed construction on the intervenor's view of the ocean. None of these factors bear any relevance to reasons assigned by the Plaintiff for obtaining a variance.

■ The Superior Court, in reviewing on appeal a decision of a zoning board of appeals does not act as it would if the action was initiated in that court as an original proceeding. Rather, that Court acts on the appeal in an appellate capacity, thus not having the right to substitute its judgment on the facts for that of the appeals board. Moyer v. Board of Zoning Appeals, 233 A.2d 311 (Me.1967); Keeney v. City of Overland Park, 203 Kan. 389, 454 P.2d 456, 459 (1969) states the rule in this language:

" 'The statutory proceeding * * * is neither a trial *de novo* nor an appeal in the true sense of the word. When the trial court hears evidence anew in a case of this character, the proceeding resembles a trial *de novo,* but there the semblance ends' * * * Although we said that the proceeding in [a] district court bears some semblance of a trial *de novo,* we cautioned that the power of the court is limited to determining (a) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed; and (b) the reasonableness of such action. With respect to the question of reasonableness, the court *may not substitute its judgment* for that of the governing body and should not declare the action of the governing body unreasonable *unless clearly compelled to do so by the evidence*." (Emphasis supplied.)

*Lovely* adopted the Kansas rule. 259 A.2d at 668.

The scope of review is thus limited to a determination of whether or not the decision appealed from was unlawful, arbitrary, capricious or unreasonable. Since there can be no doubt that the Board acted in a lawful capacity, and there is no suggestion that its action was either arbitrary or capricious, the only reviewable issue is the reasonableness of the decision.

■ The Zoning Board viewed the locus in issue, the members being entitled to give due consideration to whatever knowledge they thus acquired. Dubiel v. Zoning Board of Appeals of East Hartford, 147 Conn. 517, 162 A.2d 711 (1960). The Board saw the Plaintiff's building, the front yard, adjacent street and the neighboring buildings. Certainly, the board members would be aware of winter road conditions at that particular location. Their knowledge would encompass the traffic problems readily foreseeable and could make an informed judgment as to whether allowing a structure to be erected in close proximity of that particular street would "generate unusual traffic conditions affecting the general neighborhood."

The Justice below stated: "Their [Zoning Board of Appeals] stated reason for denying the application has no basis in fact, and from the evidence presented to this court, the opposite is true. The construction of the proposed garage on Plaintiff's land will relieve a congested and potentially dangerous situation at the dead end of the unaccepted street." Clearly, the Justice improperly substituted his judgment for that of the Zoning Board of Appeals.

The entry is:

Appeal sustained.

WEBBER, J., sat at argument but retired before this opinion was adopted.

All Justices concurring.