**COMMUNITY SCHOOL, INC.**

v.

**ZONING BOARD OF APPEALS OF the TOWN OF CAMDEN and Town of Camden.**

Supreme Judicial Court of Maine.

Feb. 28, 1977.

Strout, Payson, Pellicani & Cloutier by Arthur E. Strout, James W. Strong, Rockland, for plaintiff.

Paul L. Gibbons, Camden, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

This is an appeal by the defendant Zoning Board of Appeals of the Town of Camden (Board) from a judgment entered in the Superior Court (Knox County) reversing a decision of the Board which had refused to grant authority, as requested, to plaintiff Community School, Inc., (Community) to engage in a use allowed as an "exception" under the Town's Zoning Ordinance.

We deny the appeal.

The facts are these.

Community operates a home and school for teenage children and, by approval of the Maine Department of Education, grants high school diplomas. For two years Community housed its activities at 20 Cross Street, Camden, in the area designated by the Zoning Ordinance as the "Residential 2" Zone. Because this use existed at the time the Zoning Ordinance was enacted, Article 1 of SECTION III "excepted [it] from the regulations in all Zones."

Early in 1975, Community decided to increase its enrollment to a maximum of eight students. To that end, it leased a house at 79 Washington Street—also in the "Residential 2" Zone—and began renovations. As occurring after the effective date of the Zoning Ordinance, this use was subject to the regulations applicable to the "Residential 2" Zone, which, as here pertinent, were:

"The intent of the Residential 2 Zone is to encourage moderate standard residential development with one, two and three family homes and as exception certain other facilities residential in character or serving the neighborhood.

\*   \*   \*   \*   \*   \*

"b. Uses permitted as exceptions: Multi-family dwellings; church; non-profit club; community facility; cemetery; one sign pertaining to the premises and measuring not more than 4 square feet; expansions of existing commercial establishments within present land boundaries; rooming house; nursing home; convalescent home; tourist home; hospital or clinic; funeral home; neighborhood store; community facility; *school* ; nursery." (emphasis supplied)

"Uses permitted as exceptions" are more explicitly regulated under Article 10 of SECTION I of the Ordinance, as follows:

"An exception may be granted only if the Zoning Board of Appeals has established that the proposed modification is desirable for the development of the town and that it will not depart from the intent of the comprehensive plan and this ordinance, and that the proposed lo-

cation is not undesirable for the proposed use; and that it will not abuse the character of the neighborhood, and that it will not create unreasonable demands for municipal services. The Board of Appeals may prescribe reasonable additional requirements as conditions for an exception if necessary to meet the above requirements."

On January 29, 1975 Community applied to defendant Board to have its proposed relocation at 79 Washington Street authorized as a "permitted use exception." After a public hearing on February 11, 1975, the Board denied Community's request, finding: first, the proposed use would not meet the requirements of Article 10 of SECTION I of the Ordinance (above-quoted) governing allowance of uses to be permitted as exceptions, in that: (a) the proposed relocation of Community School would be "undesirable for the development of the Town"; (b) such relocation would "depart from the intent of the comprehensive plan" of the Ordinance; (c) the Washington Street property would be "undesirable for the proposed use" and (d) the proposed relocation would "abuse the character of . . . [the] neighborhood"; second, Article 3 of SECTION III, applicable to all Zones, would be transgressed because the proposed use would be "injurious, bad and otherwise offensive to the surroundings"; [1] and, third, Article 4 of SECTION III, applicable to all Zones, would be violated in that the proposed use would (a) "significantly depreciate the value of adjacent real estate"; [2] and (b) violate Article 10 of SECTION III of the Ordinance, as applicable to all Zones, because it "would not be provided with adequate off-street parking." [3]

---

1. Article 3 of SECTION III provides:
"Uses or structures judged to be dangerous, noxious, injurious, unsightly, noisy, bad smelling, dirty, dusty, sooty or otherwise offensive to the surroundings or the community as a whole are prohibited."

2. Article 4 of SECTION III reads:
"In no zone shall a use or structure be permitted for which it can be established that

it would significantly depreciate the value of adjacent real estate."

3. Article 10 of SECTION III states:
"Every new structure and use shall be provided with adequate off-street parking facilities. In case of extension of a use or alteration of a use, the extension or the entire alteration shall be provided with adequate parking. The Planning Board shall

■ Community sought judicial review of the Board's decision by proceeding in the Superior Court in accordance with Rule 80B M.R.C.P. On June 13, 1975, the Justice presiding in the Superior Court—granting in favor of Community its motion for summary judgment based on the pleadings and the transcript of the February 11, 1975 Board hearing—ordered entry of judgment reversing the decision of the Board and allowing Community's request for a permitted use as an exception.[4]

The rationale of the presiding Justice's decision was as follows. The Justice concluded that all of the Board's findings concerning Community's inability to meet the requirements of Article 10 of SECTION I (delineated above as "first, (a), (b), (c) and (d)") were errors of law because the asserted sources of the violations—the ostensible "standards" of Article 10 of SECTION I—were inadequate to fulfill constitutional mandates governing legitimate legislative delegations to administrative bodies. See: *Waterville Hotel Corp. v. Board of Zoning Appeals*, Me., 241 A.2d 50 (1968).

However, ruling further that this constitutional infirmity of Article 10 of SECTION I did not destroy the entire Ordinance, the presiding Justice considered the other findings of the Board based on other Articles of the Ordinance—the findings above-designated as "second", "third" and "fourth"—and held them also erroneous *as a matter of law,* for the following reasons.

The Justice viewed Article 3 of SECTION III (the source of Board finding "second" above-designated) as prohibiting

establish reasonable proportionate standards."

4. Since the proceedings in the Superior Court did not occasion an evidentiary hearing, we need not reach the question of the scope of Superior Court review of zoning board action (above-described) as precipitated by the interplay of 30 M.R.S.A. § 2411(3)(F) and *Lippoth v. Zoning Board of Appeals, City of South Portland,* Me., 311 A.2d 552 (1973). We may note, however, as a guide to practice, that we view § 2411(3)(F), ap-

any use constituting a nuisance at common law, and concluded that Community's proposed project could not be thus characterized on the evidence adduced at the Board hearing. With regard to the Board's finding based on Article 4 of SECTION III of the Ordinance (finding "third" above-designated), *concerning impermissible depreciation of neighboring real estate,* the Justice ruled that the record failed to establish that the relocation of Community School "would *significantly* depreciate" local values. Finally, the presiding Justice found the record likewise barren of evidence to support the Board's conclusion, contained in the above-designated finding "fourth", that Community's provision for off-street parking would be inadequate under Article 10 of SECTION III of the Ordinance.

### I—*The Board's Findings Based on Article 10 of SECTION I of the Ordinance*

The purported "standards" of Article 10 of SECTION I relied on by the Board were,

"[1] . . . desirable for the development of the town . . . [2] will not depart from the intent of the comprehensive plan and this ordinance, . . . [3] . . . not undesirable for the proposed use; and . . . [4] will not abuse the character of the neighborhood, . . . ."

The presiding Justice held all of them constitutionally defective because he deemed them inadequate as

"guidelines by which the Board can distinguish between . . . [exceptions]

plicable in the *Lippoth* case but not there cited, as a legislative restatement of the interpretation given its predecessor, 30 M.R.S.A. § 4954, in *Moyer v. Board of Zoning Appeals,* Me., 233 A.2d 311 (1967); and *Lovely v. Zoning Board of Appeals of the City of Presque Isle,* Me., 259 A.2d 666 (1969). Thus, under § 2411(3)(F), which specifies that the Superior Court hearing shall be "a trial de novo without a jury", the presiding Justice is limited to review of issues litigated before the Board and the reasonableness of Board action.

that are undesirable and will abuse the character of the neighborhood and those which will not."

We need not reach the constitutional issue thus posited by the presiding Justice since we conclude that the Board's findings predicated on Article 10 of SECTION I of the Ordinance were errors of law for other reasons—as delineated in *Phillips Petroleum Company v. Zoning Board of Appeals of the City of Bangor,* Me., 260 A.2d 434, 436 (1970).

█ In *Phillips,* the facts of which are very similar to those before us, the zoning ordinance permitted the operation of gas stations in the "Local Business Zone" as a "conditional use" upon approval by the zoning board of appeals.[5] General guidelines—such as those provided by Article 10 of SECTION I of the Ordinance here—governed board determinations as to such "conditional uses." As we clarified in *Phillips*:

". . . by *permitting . . . a conditional use within the zone . . .* [the ordinance embodies a] legislative determination that *such . . .* [uses] *are not ordinarily detrimental or injurious to the neighborhood within the zone.*" (emphasis supplied) (p. 435 of 260 A.2d)

It is, therefore, a condition precedent to the Board's right to deny a use which has been given a *generalized* legislative approval that the record before the Board contain significant evidence to constitute a preliminary showing that the proposed use

". . . would possess any unique or distinctive characteristics which would serve to differentiate it . . . from any other . . . [such use] in the zone." (p. 436 of 260 A.2d)

Hence, our inquiry here becomes directed to whether the record indicates that Community possesses

"any unique or distinctive characteristics which would serve to differentiate it . . . from any other . . . [school] in the [Residential 2] zone." (p. 436 of 260 A.2d)

In its findings concerned with Article 10 of SECTION I of the Ordinance the Board merely parroted the Ordinance language, concluding that the use sought to be authorized was "undesirable for the development of the Town", would

"depart from the intent of the comprehensive plan of . . . [the] Ordinance",

was "undesirable for the proposed use", and would "abuse the character of . . . [the] neighborhood." As we made clear in *Phillips*, such ultimate characterizations are meaningless, where the Ordinance itself recognizes the use as generally permissible, absent a showing of "unique or distinctive characteristics" distinguishing the use which the Board would deny in the particular instance from that deemed generally permissible by the Ordinance. Here, the Board's merely conclusory findings provide no such indication, and we find no evidence in the record which could support the requisite finding of "unique or distinctive" circumstances.

Plainly, the size of the Community School (eight students maximum) is not so unmanageable as to be "unique or distinctive"—especially in light of the record showing that the proposed location is within one block of a public school which serves approximately 1,000 pupils. Community's plan contemplates renovation of an existing dwelling and thus raises none of the special issues sometimes attendant upon new construction. The record does contain vague insinuations that students at

5. We view the word "exception" in the instant Ordinance as the equivalent of the word "conditional use" in the Bangor ordinance.

the present location had misbehaved on past occasions, but no concrete evidence differentiates the discipline problems of Community School from those familiar to all schools.

We therefore hold the Board's finding as embodied in the above-designated "first" (a), (b), (c) and (d), and predicated on Article 10 of SECTION I of the Camden Zoning Ordinance, erroneous as a matter of law because unsupported by evidence.

### II—The Board's Findings Based on Articles other than Article 10

In finding "second" (above-designated) the Board asserted a violation of Article 3 of SECTION III because the Board deemed the proposed relocation "injurious, bad and otherwise offensive to the surroundings." The presiding Justice, however, reasoning that the language of the Ordinance described a common law nuisance, concluded that the evidence was insufficient to show such nuisance.

We agree with the presiding Justice. As explained in *Phillips*, supra, that the Ordinance permits a school as an "exception" use—i. e., the "conditional use" dealt with in *Phillips*—connotes an advance legislative determination that a school *generally* is not "injurious, bad and otherwise offensive to the surroundings" of its zone. Thus, Board finding "second" (above-designated) can be upheld only if it is supported by evidence showing "unique or distinctive characteristics" requiring that Community's particular proposed school use be denied as a nuisance. There is no such factual foundation in the record.

■　Relying on Article 4 of SECTION III of the Ordinance, the Board concluded in finding "third" (above-designated) that Community's requested use "would significantly depreciate the value of adjacent real estate." Underscoring the word "significantly", the presiding Justice held the record lacking in evidence proving devaluation to that extent.

We agree. Whatever the purported application of Article 4, SECTION III (applicable to all zones) to "exceptions" such as the school before us,[6] we find the evidence totally inadequate to sustain the burden of establishing *"significant"* depreciation. (emphasis supplied) One witness vaguely asserted that Community's project "would . . . have a negative effect on the value of existing nearby real estate." Another speculated that the proposed "exception" would "diminish the market value of properties in that area." Whether such inexplicit testimony would buttress a finding of *some* devaluation is questionable; that it fails to support a conclusion of *significant* depreciation is plain.

In its finding "fourth" (above-designated) the Board asserted that Article 10 of SECTION III of the Ordinance would be violated because Community's proposed use would lack provision for "adequate" off-street parking. Once again, the presiding Justice ruled this finding unsupported by the evidence before the Board, and we concur. Various statements at the hearing which may have led to the Board's conclusion described factors more imaginary in their impact than real. Officials for Community testified that the school owned but

---

6. As has heretofore been developed, we view the conferring of "permitted-use-as-an-exception" status as legislative recognition of *per se* compliance in general, with the guidelines of Article 10 of SECTION I and Article 3 of SECTION III. *Phillips*, supra. It may well be that a provision prohibiting *some* depreciation of neighboring land would require similar treatment, since it could be inferred from the allowance of "exceptions" that the enactors contemplated some permissible fluctuation in values. See, for example, the

"conditional use" guidelines of the Cape Elizabeth ordinance before this Court in *Moyer v. Board of Zoning Appeals*, supra, at 315, 316. We need not reach that issue, however, since Article 4 of SECTION III prohibits *significant* devaluation, thus providing a more *specific* criterion outside the scope of the *Phillips* principle. Likewise, the provision of Article 10, SECTION III regarding off-street parking, as discussed below, requires Board inquiry into questions of municipal safety in any *particular* instance.

one vehicle, and permitted the students none. Patently, then, Community's proposed use of its Washington Street property involved no necessity for special parking arrangements since Community's parking needs would be no more, and even less, than those of other dwellings authorized as of right in the Zone.[7]

All of the Board's findings being erroneous as a matter of law, the presiding Justice acted correctly in reversing the decision of the Board and ordering summary judgment in favor of Community.

The entry is:

*Appeal denied.*[8]

All Justices concurring.

7. Besides the many "permitted uses as exceptions" in the Residential 2 Zone the Camden Ordinance allows as of right, two- and three-family dwellings. Article 2(a) of SECTION IV.

8. The parties stipulated at oral argument that neither wished to present evidence in the Superior Court additional to the transcript of the hearing before the Board of Zoning

Appeals. Hence, we need not now be concerned with whether, before ordering summary judgment, the Justice presiding in the Superior Court should have allowed the parties opportunity to present additional evidence in the Superior Court—as might have been open to them under the procedures delineated in 30 M.R.S.A. § 2411(3)(F) and the clarification in *Lippoth v. Zoning Board of Appeals, City of South Portland,* supra. See, n. 4, supra.