**PENOBSCOT AREA HOUSING DEVEL-
OPMENT CORPORATION et al.**

v.

**CITY OF BREWER et al.**

Supreme Judicial Court of Maine.

Argued Jan. 16, 1981.

Decided Aug. 14, 1981.

William H. Laubenstein, III, Asst. Atty. Gen. (orally), Augusta, Theodore S. Curtis, Jr. (orally), Curtis & Griffin, Orono, for plaintiffs.

David D. Gregory, Special Master, University of Maine School of Law, Michael Feldman, Pine Tree Legal Services, Portland, Jane Bloom Yohalem, Mental Health Law Project, Washington, D.C., for amici curiae.

Libhart, Ferris, Dearborn, Willey & Ferm, Joel A. Dearborn (orally), Brewer, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

NICHOLS, Justice.

This appeal presents several issues, novel in our jurisdiction, as to the applicability of

local zoning ordinances to state-related projects.

The Penobscot Area Housing Development Corporation is a private, nonprofit Maine corporation, recently organized to provide housing for retarded citizens. For that purpose it has negotiated a purchase and sale agreement to acquire a house and lot in a district of the City of Brewer which is zoned for low density single family residential use under the City's zoning ordinance. The Corporation applied to the City's code enforcement officer for an occupancy certificate and described the proposed use as "group home for six adults or older minors, which group home would be licensed as a Boarding Home by the State." The Corporation intended to use the property as a group home for six retarded persons who would be supervised by "approximately two" full-time employees. The Brewer Code Enforcement Officer, William L. Wetherbee, denied the occupancy permit because he concluded the Corporation's proposed use did "not meet the terms of the City of Brewer's zoning ordinance as a single family." Wetherbee recommended that the Corporation comply with the ordinance by applying for a nursing home use rather than as a single family use, and by meeting the additional requirements of a nursing home prescribed by the ordinance. Declining to adopt Wetherbee's suggestions, the Corporation appealed to the City's Board of Appeals. See 30 M.R.S.A. § 2411 (1978). The Board of Appeals held a hearing and later issued a statement, which set forth findings of fact and affirmed Wetherbee's decision that the proposed use could not be classified as a single family use under the ordinance.

From the Board of Appeal's decision, the Corporation sought review of that decision by the Superior Court (Kennebec County) pursuant to 30 M.R.S.A. § 2411(3)(F) (1978) and M.R.Civ.P. 80B. Joining in seeking that review were the State of Maine and the State Bureau of Mental Retardation. The Defendant in the Rule 80B review was the City of Brewer.

Before a plenary hearing was held in Kennebec County the City moved to dismiss the action for improper venue, arguing that neither the State nor the Bureau was a proper party to the review and thus venue should have been laid in Penobscot County where both the Corporation's principal place of business and the City were located. See 14 M.R.S.A. § 505 (1978). After a nontestimonial hearing the court denied the City's motion to dismiss. The Plaintiffs then amended their complaint to allege that the Bureau was before the Superior Court on Rule 80B review both individually and as the legal guardian of three incompetent persons from the Brewer area who already had been selected to live in the proposed group home. In that posture, the court held a hearing to review the Board's decision on its merits and, by an order dated April 16, 1980, affirmed it.

On their appeal to this Court, the Corporation, State, and Bureau challenge the Superior Court's order and raise several important issues concerning the applicability of local zoning ordinances to state-related projects, the proper construction of the Brewer zoning ordinance, and the constitutionality of the Superior Court's construction of that ordinance. The City of Brewer cross appeals, contending that the Superior Court erred in denying its motion to dismiss for improper venue.

We deny both the appeal and the cross appeal.

### Venue

The City contends that the Superior Court erred in denying its motion to dismiss for improper venue. This assertion requires our evaluation of the status of both the State and Bureau as participants at various stages in the proceedings. The right of appeal to the Superior Court from decisions rendered by municipal boards of appeal is statutorily governed by 30 M.R.S.A. § 2411(3)(F) (1978). That section provides:

An appeal may be taken, within 30 days after the decision is rendered, *by any party* to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B.

The hearing before the Superior Court shall be without a jury.

*Id.* (emphasis supplied). This Court has liberally construed the term "any party" to accommodate the informal features of hearings before municipal bodies and to promote the Legislature's interest in providing a forum for aggrieved persons. *Pride's Corner Concerned Citizens Association et al. v. Westbrook Board of Zoning Appeals et al.,* Me., 398 A.2d 415, 417 (1979). Thus, in contrast to the more rigid standards regulating party status under M.R.Civ.P. 17, we held in *Pride's Corner* that "party" under section 2411(3)(F) means no more than "a participant in the proceedings who is aggrieved by the action of the appeals board." *Id.* at 418. We went on to specify, however, that an aggrieved party is one that suffers a "particularized injury" and that this definitional component of party derives from the judicial requirement that a party have standing to bring an action. *Id.* *See also Chabot v. Sanford Zoning Board of Appeals,* Me., 408 A.2d 85 (1979); *Cunningham v. Kittery Planning Board,* Me., 400 A.2d 1070, 1078 (1979); *Matter of Lappie,* Me., 377 A.2d 441, 443 (1977); *Walsh v. City of Brewer,* Me., 315 A.2d 200, 205–07 (1974).

While we are satisfied that the State and Bureau participated in the proceeding before the appeals board, we agree with the City that the State and the Bureau did not suffer a particularized injury sufficient for purposes of standing and the status of party which standing confers. The State and Bureau argue that they have significant interests at stake and that these interests have been frustrated by the Brewer Code Enforcement Officer's refusal to grant the Corporation an occupancy permit for the proposed group home. Specifically, the State and Bureau contend that they must observe mandates of state[1] and federal law[2] to protect the rights of mentally retarded citizens and to promote their welfare. These mandates include placement of the retarded in home-like environments in the general community. In response to these mandates, the State and Bureau have sponsored a variety of programs designed to assist qualifying private organizations in financing and operating community group homes.

While persuaded that the State and Bureau have legitimate concerns with the statewide success of community group homes, we conclude that those concerns alone do not give rise to a particularized injury in this case. Nothing in the record generated before the Brewer Appeals Board indicates that the State or Bureau have more than a general policy interest in this particular Corporation's proposed group home. In fact, at the hearing before the Appeals Board, the Bureau's Regional Administrator frankly admitted he had not seen the site proposed for the group home, that the site had not been licensed or inspected by the State, and that the State would have to inspect the site before the group home could accommodate residents. Moreover, although the Corporation had negotiated a purchase and sale agreement with the seller, the State and Bureau were not parties to that contract and no contract for financing, grants, or services had ever been negotiated between the Corporation and the State or Bureau. All the record reveals is that the Bureau had provided the *Corporation with general information no different from that available to any organization considering the prospects of establishing a group home in Maine.* To hold that a "particularized injury" was suffered by the State or Bureau on such a record would debilitate that statutory requirement.

Under the unique circumstances of this case we need not review the decision of the Superior Court on the question of venue. M.R.Civ.P. 61. *See Torrey v. Congress Square Hotel Co.,* 145 Me. 234, 75 A.2d 451 (1950). Less than one month after the Superior Court denied the City of Brewer's motion to dismiss and before the hearing on the merits, the Plaintiffs filed an affidavit

---

1. *See generally* 34 M.R.S.A. § 2001 *et seq.* (1978 & Supp.1980–81).

2. *Wuori v. Zitnay,* No. 75–80–SD (D.Me. July 14, 1978).

of the Director of the Bureau of Mental Retardation with the Superior Court. This affidavit specifically identified three named individuals as incompetent wards of the state and members of the plaintiff class in *Wuori v. Zitnay*, No. 75–80–SD (D.Me. July 14, 1978) and averred that these individuals had been selected to reside in the proposed group home before the Appeals Board hearing was conducted on July 12, 1979. The Rule 80B complaint was then amended to make them parties to the action.

 Under both state legislation[3] and the mandate of the federal court,[4] these three incompetent persons were entitled to living accommodations in an environment least restrictive of their liberty. Group homes located in the general community are clearly favored under state policy as best fulfilling the living accommodation needs of mentally retarded individuals. *See Wuori v. Zitnay, supra* at App. B, § A.2.(a), § C.3; 34 M.R.S.A. § 2147(2)(B) (1978). The specific designation of these three incompetent individuals as future residents of the proposed group home in Brewer thus established a sufficiently definite interest in the controversy to conclude fairly that these individuals suffered a particularized injury under the test set forth in *Pride's Corner, supra,* when the City of Brewer denied an occupancy certificate to the Corporation. Unlike the State and Bureau, they were proper parties to the Rule 80B appeal. *Cf. Chabot v. Sanford Zoning Board of Appeals*, Me., 408 A.2d 85 (1979) (plaintiff was improper party where he failed to plead or prove a particularized injury).

 Because these three individuals were proper parties to the Rule 80B review, we think the participation of the State and Bureau in the capacity of public guardian pursuant to P.L.1973, ch. 640 § 1[5] was appropriate. Venue in actions which are local in nature between a natural person or corporation and a municipality may be laid

in the county where either party lives or is situated. 14 M.R.S.A. § 505 (1978). A guardian's residence or situs is cognizable in selecting proper venue. *Haines v. Lamb,* 206 Cal.App.2d 322, 24 Cal.Rptr. 146 (1962); *Kimsey v. Caudell,* 109 Ga.App. 271, 135 S.E.2d 903 (1964); *Chavez v. Lowe,* 74 N.M. 754, 398 P.2d 622 (1965). Accordingly, the problem, if any, of venue in Kennebec County was cured once the fiduciary relationship of the State and Bureau to the incompetents was formally identified by amendment to the complaint.

Significantly, no other grounds for prejudice have been established by the City. We conclude that ultimately the venue in this action was properly laid in Kennebec County.

### Zoning Exemption for the State

██ Municipal home rule powers to prescribe and enforce zoning ordinances are limited by statute. Relevant to this controversy is a statutory provision declaring that "Any zoning ordinance shall be advisory with respect to the State." 30 M.R.S.A. § 4962(1)(E) (1978).

The Corporation contends that this statutory provision exempted its proposed group home from the Brewer ordinance because the Corporation was acting as an agent of the State in furtherance of clearly articulated state obligations and interests by initiating the group home project in the City of Brewer.

Under Maine law, nonprofit corporations may be organized for a wide variety of purposes which may often promote state interests. *See* 13–B M.R.S.A. § 201 (Supp. 1978). Such corporations are often the beneficiaries of financial assistance, programs, and counsel offered by state agencies.

We cannot conceive that by the statute cited the Legislature intended to exempt all such corporations from local zoning ordinances. Our construction of section

---

3. 34 M.R.S.A. § 2141(2)(A) (1978).

4. *Wuori v. Zitnay, supra* at App. A, §§ A.1, A.2; App. B, § F.1.

5. Formerly codified at 18 M.R.S.A. § 3638 (Supp.1980), the provision has been repealed by Me.P.L.1979, ch. 540 § 1 which enacted the new probate code.

4962(1)(E) is aided by the presence of other provisions in section 4962. Illustratively, subsection (1)(C) provides that a public service corporation can be exempted from an ordinance only where "the Public Utilities Commission has determined that such exemption is reasonably necessary for public welfare and convenience." For a second example, subsection (1)(D) unequivocally makes county and municipal governments subject to zoning ordinances. These companion provisions reveal a clear legislative preference for compliance with local zoning ordinances by all institutions affected with a public interest so as to prevent capricious disruptions in planned community development. Although we are sensitive to the difficulties faced by organizations like this Corporation in finding appropriate locations for group homes, we do not read section 4962(1)(E) as authorizing unrestricted suspension of legitimate zoning regulations for nonprofit corporations serving state interests absent a showing of compelling need, and unless existing, as well as continuing, state involvement of a substantial nature has been established by the party claiming the exemption. *See* Comment, *Governmental Immunity from Local Zoning Ordinances*, 84 Harv.L.Rev. 869, 883–86 (1971).

 The court below concluded that evidence before the Board of Appeals was insufficient to support a finding of such state involvement. Our review of the record finds support for the conclusions

reached by that court.[6] The degree of state involvement in the proposed group home was not only speculative but, moreover, there was simply no showing that other suitable locations were unavailable in the Brewer area. We, therefore, conclude that the Corporation was not exempt from legitimate local zoning regulations pursuant to 30 M.R.S.A. § 4962(1)(E).[7]

*The Ordinance Provision for Family Uses*

The Plaintiffs next challenge the Superior Court's affirmance of the Board's construction and application of a section of the Brewer Zoning Ordinance providing for districts in which low density, single family residential uses were favored. *Brewer Zoning Ordinance*, Art. 3, § 302. Another section of the ordinance explicitly defined family:

> "*FAMILY*" is a single individual doing his own cooking, and living upon the premises as a separate housekeeping unit, or a collective body of persons doing their own cooking and living together upon the premises as a separate housekeeping unit in a domestic relationship based upon birth, marriage or other domestic bond as distinguished from a group occupying a boarding house, lodging house, club, fraternity or hotel.

*Brewer Zoning Ordinance*, Art. 1, § 101. After a hearing, the Brewer Board of Appeals concluded that the proposed group home for retarded persons did not meet the

---

**6.** In the court's opinion accompanying its order affirming the Board of Appeals, the court found:

> The matter (application of 30 M.R.S.A. § 4962(1)(E)) was not developed in full before the Board. . . . While the present relationship was well elucidated, the record does not show the long-term State connection with the home beyond generalities. Regulations on operations were not introduced. No testimony as to the substance of the contract [the Plaintiffs alleged would be negotiated with the State] appears on the record. Half of the persons to be resident are not state wards, and it is unclear what their exact status is, or whether all residents might be outside State guardianship in the future.
>
> Courts should hesitate to avoid legitimate municipal regulations in the absence of a definite showing of continuing State action.

> The evidence in this record is insufficient to grant the relief requested.

**7.** Although application of section 4962 was the subject of some general remarks at the hearing before the Board of Appeals, it is not clear that the issue was ever formally raised by the Plaintiffs or that the Board of Appeals ever formally ruled on the issue. While we here affirm the Superior Court's conclusion that there was insufficient evidence to exempt the Corporation, we note also that this Court and the Superior Court generally will not review issues not litigated before the Board. *Community School v. Zoning Board of Appeals of the town of Camden*, Me., 369 A.2d 1146, 1148, n.4 (1977); *Lippoth v. Zoning Board of Appeals et al.*, Me., 311 A.2d 552, 556 (1973); *Moyer v. Board of Zoning Appeals*, Me., 233 A.2d 311, 316 (1967).

definition of family in the ordinance. The Board's decision recited a litany of factual findings which, taken together, led the Board to affirm the enforcement officer's refusal to grant an occupancy permit based on the Corporation's characterization of the use under the definition of family set forth above. The Brewer ordinance permitted other uses in the low density single family residential districts if special requirements were met. *Brewer Zoning Ordinance*, Art. 3, § 302.3, § 401. However, the Corporation proposed its group home as a single family residential use in its application and appeal to the Board. Our review of the action below is thus limited to the single issue of whether the Superior Court erred in affirming the Board's decision that the concept of a single family use in the Brewer ordinance did not cover the proposed group home. *See Lippoth v. Zoning Board of Appeals, City of South Portland*, Me., 311 A.2d 552, 556 (1973).

 Construction of zoning ordinances is a legal determination. *Moyer v. Board of Zoning Appeals*, Me., 233 A.2d 311, 318 (1967). On appeal both before the Superior Court in a Rule 80B proceeding and before this Court pursuant to Rule 80B(d), the reviewing court's function is to determine only whether the decision of the Board of Appeals was unlawful, arbitrary, capricious, or unreasonable. *Lippoth v. Board of Zoning Appeals, supra* at 557; *Frost v. Lucey*, Me., 231 A.2d 441, 448 (1967). In reviewing the ordinance before us, we note at the threshold that relationships other than those based on blood or law, i. e., founded on birth or marriage, are included in the definition of family. Relationships based upon "other domestic bond[s]" satisfy the ordinance as well.

 The Plaintiffs' principal argument appears to be that the interpretation of the ordinance by the Board and its affirmance by the Superior Court placed undue emphasis on the role of the staff and ignored the fact that the plain purpose of the group home was to create a family environment for the residents. The requirement of a domestic bond, the Plaintiffs argue, would

have been met by the relationship forged among the residents themselves as they lived and worked together. As authority for their position, the Plaintiffs cite several decisions from other jurisdictions in which similar definitions of family have been construed to include group homes. *See Group House of Port Washington v. Board of Zoning, North Hempstead*, 45 N.Y.2d 266, 380 N.E.2d 207, 408 N.Y.S.2d 377 (1978); *Oliver v. Zoning Commission of Town of Chester*, 31 Conn.Sup. 197, 326 A.2d 84 (1974). We reject the Plaintiffs' argument. Read in context with the definition as a whole, the concept of "domestic bond" implies the existence of a traditional family-like structure of household authority. Such a structure would include one or more resident authority figures charged with the responsibility of maintaining a separate housekeeping unit and regulating the activity and duties of the other residents. *City of White Plains v. Ferraioli*, 34 N.Y.2d 300, 306, 313 N.E.2d 756, 759, 357 N.Y.S.2d 449, 453 (1974). *See* Boyd, *Strategies in Zoning and Community Living Arrangements for Retarded Citizens: Parens Patriae Meets Police Power*, 25 Villanova L.Rev. 273, 295 (1979–80). In so doing, this resident authority figure serves legitimate zoning interests of a community by stabilizing and coordinating household activity in a way that is consistent with family values and a family style of life. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974); *Barnard v. Zoning Board of Yarmouth*, Me., 313 A.2d 741, 745 (1974).

 Concerning the structure of authority at the proposed group home as it relates to the existence of a domestic bond, the Board found that although a staff would be employed by the Corporation for the purposes of maintaining a home for six retarded adults, staff members would not necessarily reside at the home; rather, the Board's findings suggested the staff would serve on a rotating basis. Thus, a central figure of authority residing on the premises similar to a parent or parents in a traditional family setting was clearly absent in the group home proposal tendered by these Plaintiffs.

As the Superior Court observed, the absence of a resident authority figure in the Corporation's proposal clearly distinguishes this case from cases cited by the Plaintiffs in which the definition of family was held to include group homes. *See Oliver v. Zoning Commission of Town of Chester, supra* (resident houseparents for 10 retarded adolescents); *Group House of Port Washington, Inc. v. Board of Zoning, supra* (resident surrogate parents for seven children). *See also Hessling v. Bloomfield*, 196 Colo. 124, 563 P.2d 12 (1977) (married resident couple as surrogate parents for six retarded children); *Freeport v. Association for Help of Retarded Children*, 94 Misc.2d 1048, 406 N.Y.S.2d 221, aff'd 60 App.Div.2d 644, 400 N.Y.S.2d 724 (1977) (resident house parents); *City of White Plains v. Ferraioli, supra* (permanent foster home for children with single married couple acting as surrogate parents). As such, evidence of a central component of the domestic bond concept was deficient. *See Browndale International, Ltd. v. Board of Adjustment*, 60 Wis.2d 182, 208 N.W.2d 121, *cert. denied*, 416 U.S. 936, 94 S.Ct. 1933, 40 L.Ed.2d 286 (1973) (supervisory personnel not resident at homes). Indeed, where the domestic bond is not based on a biological or legal relationship among the residents, the importance of a relatively permanent, resident authority figure to the existence of a domestic bond may be particularly significant.

■ Like relationships founded on marriage or birth, the notion of domestic bond also connotes a quality of cohesiveness and permanence in the relationship of residents greater than that which typically exists among boarders, members of a fraternity or club, or hotel guests. *See City of White Plains v. Ferraioli, supra*, 34 N.Y.2d at 304–05, 313 N.E.2d at 758, 357 N.Y.S.2d at 452. The language of the definition itself clearly suggests the comparison is appropriate. Relevant to the potential for cohesiveness and permanence in the relationships developed at the home, the Board of Appeals found that the residents would not control "the choice of who the incoming residents would be nor when other residents would leave." Some residents would ultimately be transferred to foster homes. The Board of Appeals further found that the average stay of a resident would be one to one and one-half years. These facts are not consistent with the development of permanent and cohesive relationships among the residents, especially in the absence of a resident authority figure. *See Lakeside Youth Service v. Zoning Hearing Board of Upper Moreland Township*, 51 Pa.Cmwlth. 485, 487, 414 A.2d 1115, 1116 (1980). Accordingly, the bond between the residents may well more resemble the relationship among boarders, club or fraternity members, whose exclusion from single family districts has been upheld in other jurisdictions. *See Des Plaines v. Trottner*, 34 Ill.2d 432, 216 N.E.2d 116 (1966); *Theta Kappa, Inc. v. City of Terre Haute*, 141 Ind.App. 165, 226 N.E.2d 907 (1967); *City of Schenectady v. Alumni Association of Union Chapter Delta Chi Fraternity, Inc.*, 5 App.Div.2d 14, 168 N.Y. S.2d 754 (1957).

■ Finally, the definition of family further specifies that the persons comprising the collective should not only be living together in a relationship founded on a domestic bond but should be "doing their *own* cooking and living together upon the premises as a *separate* housekeeping unit." *Brewer Zoning Ordinance*, Art. 1 § 101 (emphasis supplied). The Board found that the Corporation and its rotating staff would plan and manage the activities of the residents. Further, staff members were to be responsible for preparing meals and providing "some cleaning and other services." The Board of Appeals could reasonably have concluded that such an arrangement would not comply with the requirement of the ordinance that the residents do their own cooking as a separate housekeeping unit. Indeed, as the decisions of other courts suggest, extensive outside aid in the management and operation of a household detracts from the *family nature of the* home. *See Browndale International, Ltd. v. Board of Adjustment, supra.*

In light of the definitional specifications of the Brewer ordinance reviewed above,

we conclude that the decision rendered by the Board of Appeals and affirmed by the Superior Court was clearly reasonable and adequately supported by factual findings of record. The Board could reasonably have decided not only that the Corporation's proposal failed to meet the definitional criteria of a domestic bond but that it failed to satisfy more concrete specifications of the ordinance as well. While the purpose of such homes is laudable and, while the promise they hold for the retarded is heartening, we decline to interpret and apply local zoning ordinances by abandoning relatively objective standards of evaluation in favor of a judicial approach that requires an intimate evaluation of a home's purpose and effect in each case. If, as these Plaintiffs contend, the problem of locating group homes is pervasive in this state, legislative, not judicial, action may be most appropriate. *See* Comment, *Zoning for the Mentally Ill: A Legislative Mandate*, 16 Harv.J.Legis. 853 (1979).

### The Constitutional Arguments

 The Plaintiffs finally contend that the Brewer ordinance as interpreted and applied by the Board of Appeals violates their rights to due process and equal protection of the law under the Fourteenth Amendment of the United States Constitution. Zoning ordinances, implemented pursuant to the police power conferred on municipalities, are accorded a strong presumption of constitutional validity. *Barnard v. Zoning Board of Appeals of the Town of Yarmouth*, Me., 313 A.2d 741, 744 (1974); *Wright v. Michaud*, 160 Me. 164, 177, 200 A.2d 543, 550 (1964).

 The Plaintiffs contend that the application of the Brewer ordinance arbitrarily deprives them of fundamental rights in violation of the Due Process Clause of the Fourteenth Amendment because it excluded the proposed group home from single family districts based on distinctions irrelevant to legitimate zoning concerns. They contend that the ordinance, as applied, confuses "the power to control physical use of premises with the power to distinguish occupants making the same physical use of them." *Hessling v. City of Bloomfield*, 193 Colo. 124, 563 P.2d 12, 14 (1977).

At the outset we note that what, if any, fundamental rights have arguably been infringed upon in the case before us is unclear. The Plaintiffs have failed to identify in this substantive due process claim those fundamental rights they must claim were affected by application of this ordinance. Unlike the case of *Moore v. City of East Cleveland*, the fundamental right to decide matters concerning the traditional family, an institution "deeply rooted in this Nation's history and tradition," was never implicated here. 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977). Rather, as the United States Supreme Court observed in *Village of Belle Terre v. Boraas*, 416 U.S. 1, 7, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974), where an ordinance similar to the Brewer ordinance was upheld, the record reveals no fundamental right to have been affected by the Brewer ordinance. Accordingly, the Plaintiffs' only appropriate argument may be limited to whether they were denied equal protection of the laws under the ordinance. *See id.* at 8, 94 S.Ct. at 1540.

 Even assuming *arguendo* that the record revealed what fundamental rights the Plaintiffs claim were infringed, it does not necessarily follow that application of the ordinance violated due process of law. Zoning ordinances, enacted pursuant to the police power of municipalities, comply with due process guarantees if they "bear a substantial relation to the advancement of the public health, safety, morals or general welfare." *Barnard v. Zoning Board of Appeals of the Town of Yarmouth, supra* at 744; *Wright v. Michaud, supra*, 160 Me. at 171, 200 A.2d at 547. Ordinances which restrict designated areas of a community to single family residential uses serve the state interests enumerated above in several ways. In *Village of Belle Terre v. Boraas, supra* 416 U.S. at 9, 94 S.Ct. at 1541, the United States Supreme Court specifically recognized that such ordinances may properly serve to "lay out zones where family

values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." Again, in 1977 the Supreme Court affirmed the legitimacy of zoning ordinances directed at promoting "family needs" and "family values" by "limiting the types of groups that could occupy a single dwelling unit." *Moore v. East Cleveland, supra* 431 U.S. at 498–99, 97 S.Ct. at 1935. These decisions unquestionably make state interests in the preservation of land use zones which facilitate a family way of life and promote family values the proper objects of the exercise of the police power. *See* A. Rathkopf, 4 *The Law of Zoning and Planning* § 33, c. 79, at 240–42 (Supp. 1980). Thus, the Plaintiffs' due process argument may be reduced to the contention that the Brewer ordinance does not rationally serve these legitimate state purposes.

We disagree.

The Plaintiffs' specific charge that the ordinance confuses the power to control land use with the power to distinguish persons making the same use of land ignores facts of record relevant to the definitional components of family set forth in the ordinance. The absence of a resident authority figure, the relatively short period of a resident's stay, and the extensive external control over and assistance to the residents all detract from the familylike character of the

use. These facts, as we indicated above, are highly relevant here.

In fact, the language of the Brewer ordinance itself refute. the Plaintiffs' claim that the ordinance is improperly directed at relations among persons instead of land use. The ordinance's definition of family includes relationships based on domestic bonds other than those established by birth or marriage if the residents otherwise function as a separate housekeeping unit.[8] The fact that there may be situations in which application of the ordinance would not perfectly implement the Plaintiffs' conception of land use consistent with the promotion of family values and a family lifestyle in a community does not compel a finding of unconstitutionality. As Justice Douglas wrote, "[E]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function." *Village of Belle Terre v. Boraas, supra* 416 U.S. at 8, 94 S.Ct. at 1540.[9]

The Plaintiffs further challenge the application of the Brewer ordinance on equal protection grounds from two perspectives. First, they argue that the mentally retarded parties to this appeal represent a suspect class. Accordingly, the Plaintiffs contend the Brewer ordinance must be evaluated under a standard of strict scrutiny and that

---

8.· Indeed, the particular ordinance challenged by the Plaintiffs can hardly be faulted for being too broadly drafted. There is simply no evidence to support a finding that group homes of the sort proposed by the Plaintiffs were prohibited in every district of Brewer. In fact, the record suggests that the group home could have been lawfully located at the location in question if, rather than insisting on styling their application for a certificate of occupancy as a family use, the Plaintiffs had restyled their application and cooperated with local officials to meet the additional qualifications required of uses permitted in the zone other than single family uses.

9. In rejecting the Plaintiffs' due process claim, we are aware of decisions rendered in other jurisdictions which have struck down ordinances limiting the types of groups that can occupy a single dwelling unit. In particular,

both California and New Jersey have held ordinances similar to the Brewer ordinance before us unconstitutional on grounds that they were violative of certain fundamental rights. *E. g., City of Santa Barbara v. Adamson*, 27 Cal.3d 123, 610 P.2d 436, 164 Cal.Rptr. 539 (1980); *State v. Baker*, 81 N.J. 99, 405 A.2d 368 (1979). Both jurisdictions, however, have frankly acknowledged that the ordinances were offensive to rights protected under their *state* constitutions and not under the federal constitution. This Court has long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process. *Pool Beach Association v. City of Biddeford*, Me., 328 A.2d 131, 135 n.6 (1974); *Michaud v. City of Bangor*, 159 Me. 491, 493, 196 A.2d 106, 108 (1963); *Jordan v. Gaines*, 136 Me. 291, 294–95, 8 A.2d 585, 587 (1939). We discern no persuasive reason to depart from that principle here.

the ordinance cannot be upheld under that standard. Second, the Plaintiffs contend that even if we decline to agree with them that the mentally retarded are a suspect class, the ordinance as applied is violative of the equal protection requirement because it does not bear a rational relationship to legitimate state interests. For reasons that include many of the points we have made in rejecting the Plaintiffs' due process claim, we find no merit in these contentions.

 While the status of mental retardation does possess many characteristics similar to other classifications recognized as suspect by the United States Supreme Court,[10] we find it unnecessary in this case to decide the issue. Central to any equal protection claim is the existence of some state activity which discriminates against a person or group for arbitrary or invidious reasons. *See* A. Rathkopf, 1 *The Law of Zoning and Planning* § 8.01, c. 8 (1981). Under any standard of constitutional review, the state action challenged here, namely application of the Brewer ordinance, does not constitute such discrimination.

There is nothing on the record before us to indicate that application of this ordinance, neutral on its face, would affect mentally retarded persons any differently than other persons, not related by blood or law, who might wish to reside in this single family district. Furthermore, the Plaintiffs are free to revise their application to meet the requirements of an authorized use.

Neither is there sufficient evidence on this record to suggest that the Board of Appeals here applied the ordinance with any intent to exclude the mentally retarded from the district, a critical requirement in challenges on equal protection grounds to facially neutral state action.[11] The claim of discrimination underlying the Plaintiffs' equal protection argument is thus indistinguishable from the claim made by six college students and squarely rejected by the United States Supreme Court in *Village of Belle Terre v. Boraas, supra.*

In sum, these Plaintiffs have failed to overcome the presumption of constitutional validity of the ordinance which they challenge.

The entry, therefore, will be:

Appeal denied.

Judgment affirmed.

All concurring.

---

**10.** *See San Antonio School District v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1293, 36 L.Ed.2d 16 (1973). *See also* Note, 43 Albany L.Rev. 539, 562–63 (1979).

**11.** *See Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).